UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

PROTECT OUR WATER AND
ENVIRONMENTAL RIGHTS,
JIMMY ABATTI, and DOES
1 through 5, inclusive,

        Petitioners,

                                NO. CIV. S-06-2073 LKK/EFB

    v.

IMPERIAL IRRIGATION DISTRICT,
and DOES 6 through 10,
inclusive,                                O R D E R

        Respondents.
_____/

SAN DIEGO COUNTY WATER
AUTHORITY, METROPOLITAN
WATER DISTRICT OF SOUTHERN
CALIFORNIA, UNITED STATES
DEPARTMENT OF INTERIOR,
BUREAU OF RECLAMATION, and
DOES 11 through 15, inclusive,

        Real Parties in Interest.
_____/

     Petitioners, Protect Our Water and Environmental Rights

("POWER") and Jimmy Abatti ("petitioners") filed suit alleging that

Respondent, Imperial Irrigation District ("IID") violated portions

of the California Environmental Quality Act ("CEQA").  Petitioners

allege that IID violated CEQA by approving a project to line a portion of the All-American Canal ("the Canal") in Imperial County, California.  Petitioners' complaint also names the United States Department of the Interior and the Bureau of Reclamation ("the United States") as Real Parties in Interest.

Pending before the court are two related motions.  First, the United States moves to dismiss on the grounds that the court lacks subject matter jurisdiction and that the United States is not a properly named party.  Second, IID moves to dismiss for improper venue, or, in the alternative, moves to transfer venue to the Central District of California, where the Canal is located.  IID also filed a supplemental memorandum in support of dismissal based on the Rooker-Feldman Doctrine.

Upon review of the pleadings and after oral argument, it is apparent that this case must be dismissed for lack of subject matter jurisdiction.

**I.**

**BACKGROUND**

**A.   Facts as Alleged by Petitioners**

Petitioners allege that IID violated CEQA when it approved an addendum to the Environmental Impact Report ("EIR") for the All-American Canal lining project.  The EIR defined the project as one to "line a 23-mile section of the canal by constructing a concrete-lined canal parallel to the existing canal."  Compl. ¶ 5.

The All-American Canal was authorized by Congress in 1928 as part of the Boulder Canyon Project Act.  Compl. ¶ 14. The Canal

2

delivers water from the Colorado River to the Imperial Irrigation District. Compl. ¶ 15.  Although the United States retains title to the Canal, IID operates and maintains the canal under contract with the Secretary of the Interior.

The Canal is currently unlined, and, as a result, some of the water is lost through seepage into the ground. Compl. ¶ 14.   In 1988, the Secretary of the Interior began plans to line the canal. Compl. ¶ 16.   IID was the sole contractor for the Canal lining project.   Compl.  ¶ 17.

In 1991, the Bureau of Reclamation and IID published a joint Draft Environmental Impact Statement (EIS) under NEPA and a draft EIR under CEQA.  The Bureau of Reclamation was the lead agency under NEPA and IID was the lead agency under CEQA. Compl. ¶ 19. The draft EIR/EIS identified four alternative construction proposals as well as a "no project" alternative.  The Bureau of Reclamation and IID published a final EIR/EIS in 1994.  On August 22, 1994, IID issued a Notice of Determination under CEQA for the parallel canal as the lining project.  Compl.  ¶ 20-23.

After years of no action, in September 2003, the California Legislature authorized funding for the lining of the Canal.  Final designs for the lining project were initiated in 2004.  Compl. ¶ 25.  Subsequently, petitioners and others submitted objections to the design of the lining project and to some of the terms in various agreements.

Without conducting any CEQA review, on January 10, 2006, IID made discretionary approvals in furtherance of the project in that

1   it approved and authorized the General Manager of IID to execute

2   an "Agreement Among the United States Department of Interior Bureau

3   of Reclamation, the Imperial Irrigation District, and the San Diego

4   County Water Authority for the Construction of the All-American

5   Canal Lining Project Pursuant to Title II of Public Law 100-675."

6   Compl. ¶ 27.

7        On July 27, 2006 IID approved an "Addendum to Final EIS/EID

8   and Amendment to Environmental Commitment Plan" for the Canal

9   pursuant to Section 15164 of CEQA. Compl. ¶ 29.  Petitioners filed

10  the pending suit on September 15, 2006.

11  **B.    The Complaint**

12       The complaint contains only one cause of action, that being

13  a claim against IID for violating CEQA.  Petitioners allege that

14  "IID abused its discretion and failed to act in the manner required

15  by law by failing to require subsequent or supplemental

16  environmental review pursuant to Section 15162 or Section 1516 of

17  the CEQA Guidelines . . ." Compl.  ¶ 34.   Petitioners objected to

18  several changes that IID made, including, but not limited to, the

19  elimination of escape ridges which were to run continuously along

20  the Canal, steepened canal wall side slopes, and the elimination

21  of one hundred ninety-seven artificial habitat reefs that were to

22  be installed and maintained. Id.

23       Petitioners seek to enjoin IID and the United States from

24  "engaging in any activity connected with the approvals or the

25  lining project unless and until this court finds that the approvals

26  are in full compliance with CEQA and all other applicable laws."

4

1 Compl. at 10-11.[1]

2     Petitioners' complaint asserts that jurisdiction is proper as

3 "[t]his case involves a controversy to which the United States is

4 a party and is within the Court's jurisdiction under the United

5 States Constitution, Art. III, section 2 and 28 U.S.C. § 1346

6 and/or 28 U.S.C. § 1367, subd. (a)." Compl. ¶ 2. Petitioners do

7 not allege any other basis for federal jurisdiction.

8 ─────────────────────────────────────────────────────────

9 **II.**

10 **STANDARDS**

11     It is well established that the party seeking to invoke the

12 jurisdiction of the federal court has the burden of establishing

13 that jurisdiction exists. <u>KVOS, Inc. v. Associated Press</u>, 299 U.S.

14 269, 278 (1936); <u>Scott v. Breeland</u>, 792 F.2d 925, 927 (9th Cir.

15 1986). On a motion to dismiss pursuant to Federal Rule of Civil

16 Procedure 12(b)(1), the standards that must be applied vary

17 according to the nature of the jurisdictional challenge.

18     If the challenge to jurisdiction is a facial attack, i.e., the

19 moving party contends that the allegations of jurisdiction

20 contained in the complaint are insufficient on their face to

21 demonstrate the existence of jurisdiction, plaintiff is entitled

22

23     [1] Both IID and the United States explain at some length that
there are other legal challenges to the lining of the canal. Were
24 this court not to rule on the issue of federal question
jurisdiction, the court would have to consider the Rooker-Feldman
25 argument raised by IID. However, given that the court disposes of
this suit on jurisdictional grounds, a discussion of the other
26 pending legal challenges is not necessary.

to safeguards similar to those applicable when a Rule 12(b)(6) motion is made.  The factual allegations of the complaint are presumed to be true, and the motion is granted only if plaintiff fails to allege an element necessary for subject matter jurisdiction.  See 2A J. Moore, J. Lucas & G. Grotheer, Moore's Federal Practice, ¶ 12.07 (2d ed. 1987); see also Eaton v. Dorchester Development, Inc., 692 F.2d 727, 731 (11th Cir. 1982); Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981), cert. denied, 454 U.S. 897 (1981); Mortensen v. First Fed. Sav. & Loan Ass'n., 549 F.2d 884, 891 (3d Cir. 1977).  A complaint will be dismissed for lack of subject matter jurisdiction (1) if the case does not "arise under" any federal law or the United States Constitution, (2) if there is no case or controversy within the meaning of that constitutional term, or (3) if the cause is not one described by any jurisdictional statute.  Baker v. Carr, 369 U.S. 186, 198 (1962).

---

**III.**

**ANALYSIS**

Both IID and the United States raise several reasons why this case should be dismissed, or, alternatively, transferred to the Central District.  As explained herein, the court finds that subject matter jurisdiction is lacking and accordingly, the suit must be dismissed.  The lack of subject matter jurisdiction is dispositive and therefore, the court need not address the other arguments raised by IID and the United States.

**A.    Petitioners' Complaint**

Petitioners' complaint alleges that jurisdiction is proper under "Article III, Section 2 of the United States Constitution, as well as 28 U.S.C § 1346 and/or 28 U.S.C. § 1367."  Compl. ¶ 2. These provisions do not confer jurisdiction upon this court in this case.

First, § 1346 is inapplicable.  As the United States properly points out, § 1346 grants district courts original jurisdiction over a variety of civil actions in which the United States is a named defendant.   For example, § 1346 confers jurisdiction for "[a]ny . . . civil action or claim against the United States, not exceeding $10,000 in amount, founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1346(a)(2). Section 1346 also confers jurisdiction for tort claims against federal employees acting in their official capacities.

Petitioners' complaint clearly fails to state a claim pursuant to § 1346.  Most obviously, the Department of the Interior and the Bureau of Reclamation were not named as defendants.  The complaint also fails to make any allegation that these two agencies violated any applicable law.  The complaint, in essence, fails to make any allegation which would properly bring this suit within § 1346.

Petitioners also allege that jurisdiction is proper under 28 U.S.C. § 1367(a).  This section provides:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other

claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367. Under this section, "federal courts may exercise 'supplemental' jurisdiction over state-law claims linked to a claim based on federal law." Arbaugh v. Y&H Corp., 126 S. Ct. 1235, 1240 (2006). However, in order to exercise supplemental jurisdiction, the court must already have Article III jurisdiction over the case or controversy. As explained herein, petitioners' complaint fails to assert any basis for original jurisdiction, and therefore, the court cannot confer supplemental jurisdiction.

**B.   Federal Question Jurisdiction**

Petitioners' complaint also states that jurisdiction is predicated on "the United States Constitution, Art. III, Section 2." Compl. ¶ 2. In their opposition, petitioners explain that "this constitutional power extends to any case in which a federal question is an ingredient of the action." Pets.' Opp'n to the U.S. Mot. to Dismiss at 7. For the reasons discussed herein, federal question jurisdiction is lacking as well.

Article III, Section 2 of the United States Constitution establishes the scope of federal court jurisdiction, which includes "all Cases. . . arising under this Constitution. . ." This power is not self-executing. As provided for in the United States Code, "[t]he district courts shall have original jurisdiction of all

1  civil actions arising under the Constitution, laws, or treaties of
2  the United States." 28 U.S.C. § 1331.

3      In determining the presence or absence of federal
4  jurisdiction, the court applies the "'well-pleaded complaint rule,'
5  which provides that federal jurisdiction exists only when a federal
6  question is presented on the face of the plaintiff's properly
7  pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392
8  (1987); see also Beneficial Nat. Bank v. Anderson,   539 U.S. 1,
9  6 (2003)("To determine whether the claim arises under federal law,
10 we examine the 'well pleaded' allegations of the complaint and
11 ignore potential defenses.")

12     Generally, a plaintiff may only invoke federal question
13 jurisdiction by pleading a cause of action created by federal law.
14 Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S.
15 308 (2005).  In certain circumstances, however, federal question
16 jurisdiction exists even absent a federal cause of action. Id. at
17 311-312.  Federal courts have subject matter jurisdiction over
18 state law claims that "implicate significant federal issues." Id.

19     Under Grable, significant federal issues are implicated when
20 the state law claims (1) "necessarily raise a stated federal
21 issue," (2) which are "actually disputed and substantial," (3) and
22 which "a federal forum may entertain without disturbing any
23 congressionally approved balance of federal and state judicial
24 responsibilities." Id. at 314.  Not surprisingly, the Supreme Court
25 recently described the category of cases which meet the Gable
26 standard as "slim[,] ... special and small." Empire Healthchoice

1  Assurance, Inc. v. McVeigh, 126 S.Ct. 2121, 2137 (2006).

2      In the pending suit, petitioners' complaint contains a single

3  cause of action, which alleges that IID violated CEQA.  Petitioners

4  maintain that federal jurisdiction is predicated on the "permeating

5  federal nature underlying the case and the Boulder Canyon Project

6  Act."  Opp'n at 12.  Specifically, petitioners allege, inter alia,

7  that the Canal was authorized by Congress, that the contract to

8  build the Canal was a contract with the United States and that the

9  United States assisted in building the Canal.  Opp'n at 7.

10     Petitioners' allegations are insufficient to give rise to

11  federal question jurisdiction.  The single claim under CEQA fails

12  to meet the standard set forth in Grable.  The CEQA claim does not

13  "necessarily state[] a federal issue, actually disputed and

14  substantial, which a federal forum may entertain without disturbing

15  a congressionally approved balance of federal and state judicial

16  responsibilities."  Grable, 545 U.S. at 308.  Indeed, petitioners

17  fail to demonstrate how the CEQA claim even remotely hinges on

18  federal law or federal questions.

19     This conclusion is consistent with other cases in which, it

20  could be argued, there was an even stronger case for federal

21  question jurisdiction.   See City of Rome, N.Y. v. Verizon

22  Communications, Inc., 362 F.3d 168 (2nd Cir. 2004), Pinney v.

23  Nokia, Inc., 402 F.3d 430 (4th Cir. 2005), Waltrip v. Brooks

24  Agency, Inc., 417 F. Supp. 2d 768 (E.D. Va. 2006).

25     Petitioners have the burden of establishing that jurisdiction

26  exists.  KVOS, Inc. v. Associated Press, 299 U.S. 269, 278 (1936);

1  <u>Scott v. Breeland</u>, 792 F.2d 925, 927 (9th Cir. 1986).  For the

2  reasons explained above, petitioners failed to meet their burden

3  and the court concludes that subject matter jurisdiction is

4  lacking.

5                                    **IV.**

6                               **CONCLUSION**

7  1.   The motion to dismiss filed by Real Parties in Interest, the

8       United States Department of the Interior and the Bureau of

9       Reclamation is GRANTED.

10 2.   The motion to dismiss, or in the alternative, transfer of

11      venue, filed by defendant, Imperial Irrigation District is

12      DENIED as moot.

13 3.   The case is hereby DISMISSED and the Clerk of the Court is

14      directed to CLOSE the case.

15      IT IS SO ORDERED.

16      DATED: January 18, 2007.

17

18

19                          LAWRENCE K. KARLTON
20                          SENIOR JUDGE
                            UNITED STATES DISTRICT COURT
21

22

23

24

25

26